UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>LEAGUE OF WOMEN VOTERS OF
NEW HAMPSHIRE, ET AL.</u>

    v.                                                Civil No.  24-cv-073-SM-TSM

<u>STEVE KRAMER, ET AL.</u>

**REPORT AND RECOMMENDATION**

      This case arose from prerecorded telephone messages, robocalls, falsified through the use of artificial intelligence to sound like President Biden, that were sent to thousands of New Hampshire potential voters on January 21, 2024, just before the New Hampshire Primary. Plaintiffs, the League of Women Voters of New Hampshire, the League of Women Voters of the United States, and three New Hampshire voters who received the robocalls, brought suit against Steve Kramer, who devised the hoax and commissioned the creation of the robocalls, and Voice Broadcasting Corporation, Life Broadcasting Corporation, and Lingo Telecom, LLC, who provided services to distribute the robocalls, alleging violations of federal and state law. Plaintiffs move for a nationwide preliminary injunction (doc. no. 71) to bar defendants from distributing falsified communications and from distributing all mass communications that do not comply with state and federal law.

      Plaintiffs initiated this action in March 2024, alleging claims that defendants violated the Voting Rights Act, the Telephone Consumer Protection Act, and New Hampshire Elections Laws, NH RSA 664:14-a and 644:14-b. Plaintiffs subsequently filed an amended complaint (doc. no. 65) in which they added Voice Broadcasting as a defendant. Default was entered against Kramer on August 29, 2024. Doc. no. 92.

Plaintiffs moved for a preliminary injunction[1] and then filed an amended motion (doc. nos. 47 and 71), and defendants (other than Kramer) moved to dismiss the lawsuit (doc. no. 79). The United States filed a "Statement of Interest," pursuant to 28 U.S.C. § 517, specifically addressing the interpretation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b). Doc. no. 86. The Coolidge-Reagan Foundation filed a motion to file an amicus brief in support of the motion to dismiss. Doc. no. 97.

Only plaintiffs' amended motion for a preliminary injunction (doc. no. 71) is referred and currently before the undersigned magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); LR 72.1. The court held a hearing on the motion on July 31, 2024. Before the hearing, the parties filed a stipulation of facts along with documents in support of and in opposition to the motion for a preliminary injunction. Doc. no. 87. For the reasons that follow, the district judge should deny the motion for a preliminary injunction.

## BACKGROUND

### *Robocalls*

Steve Kramer is a political consultant who provided services, including automated calls, to political campaigns. Kramer previously worked with Paul Carpenter to create false audio recordings through artificial intelligence ("AI"). In November 2023, Kramer asked if Carpenter could create an AI-generated voice recording of President Biden, and Carpenter said that he could. On January 19, 2024, just days before the New Hampshire Primary, Kramer provided a script to Carpenter, and Carpenter created an AI generated recording, mimicking President Biden's voice, of the following message:

---

[1] At the July 31, 2024 hearing, Plaintiffs orally withdrew the original motion for a preliminary injunction (doc. no. 47), which should be terminated.

> This coming Tuesday is the New Hampshire Presidential Preference Primary. Republicans have been trying to push nonpartisan and Democratic voters to participate in their primary. What a bunch of malarkey. We know the value of voting Democratic when our votes count. It's important that you save your vote for the November election. We'll need your help in electing Democrats up and down the ticket. Voting this Tuesday only enables the Republicans in their quest to elect Donald Trump again. Your vote makes a difference in November, not this Tuesday.

Doc. no. 71-3, at 3 ("Fake Message").

Kramer needed a caller identification ("ID") number for the Fake Message to distribute it to New Hampshire voters, and he wanted to use the New Hampshire area code, 603, to make it more likely that the call would be answered. He decided to use the telephone number of Kathy Sullivan, who was associated with President Biden's campaign in New Hampshire, without her permission. He then contacted Voice Broadcasting on January 20 to set up a robocall, using the Fake Message, to be distributed to 25,000 numbers the next evening, Sunday, January 21, just two days before the New Hampshire Primary. Id. at 7. Kramer instructed Voice Broadcasting to use Kathy Sullivan's telephone number as the caller ID for the Fake Message, and at Voice Broadcasting's suggestion, agreed to add a last sentence to the Fake Message, by a different voice: "If you would like to be removed from future calls, please press two now. Call [personal cell phone of Kathy Sullivan] to be removed from future calls." Doc. no. 71-2, at 2.

Voice Broadcasting and Life Corporation are affiliated companies. Voice Broadcasting used Life Corporation's services and equipment to initiate thousands of robocalls to telephone numbers in New Hampshire. Life Corporation also routed calls to Lingo Telecom, which originated several thousand calls. New Hampshire voters received 9,581 robocalls with the Fake Message.[2] Doc. no. 71-11, at 6.

---

[2] In the FCC's "Notice of Apparent Liability for Forfeiture" against Lingo Telecom, the FCC attributes 9,581 robocalls with the Fake Message to the defendants. Plaintiffs assert that Lingo Telecom originated and provided A-level attestation to 13,235 robocalls, which is apparently based

3

*Impact of Robocalls on Plaintiffs*

The three individual plaintiffs in this case, Nancy Marashio, James Fieseher, and Patricia Gingrich, are registered voters in New Hampshire. They each received the Fake Message robocall on January 21, 2024. Each individual plaintiff realized that the message was not from President Biden or his campaign and that the message was false. Each individual plaintiff voted in the Primary despite having received the Fake Message robocall.

The organizational plaintiffs are the League of Women Voters of the United States and the League of Women Voters of New Hampshire. They refer to themselves collectively as "the League," and, to the extent necessary, with suffixes of "US" and "NH". Doc. no. 71-1, at 17-18. The League asserts that its mission is "to encourage informed and active participation in the government, increase understanding of major public policy issues, and influence public policy through education and advocacy." Doc. 71-1, at 17. The League also has a mission "to encourage citizens to register to vote, participate in elections, and engage with the civil process." Id.

The League-US states that in response to the Fake Message robocalls it changed its website and created a new alert to inform voters about robocalls, which required diversion of staff to make those changes. The League-US also changed its "internal threat matrix" for inauthentic robocalls to the second-highest ranking on the threat scale. Id. at 17-18. The League-US states generally that it "has expended, and continues to expend, resources providing additional guidance and training to staff to track inauthentic or deepfake robocalls." Id. at 18. The League-NH states that it is planning to implement changes that will cost several hundred dollars and require more volunteer

---

on Lingo Telecom's response to an FCC subpoena, but was not verified by the FCC. Doc.no. 71-11, at 9, n.59.

hours. Notably, however, the League does not assert that the robocalls thwarted or otherwise interfered with the organization's mission.

### *Consequences of Robocalls for Defendants*

The Fake Message robocalls caused a significant amount of media coverage. Kramer acknowledged on February 25, 2024, that he orchestrated and sent the Fake Message robocalls. In May, Kramer was indicted in four New Hampshire counties on 13 charges of felony voter suppression and 13 charges of misdemeanor impersonating a candidate.

At the same time, the FCC investigated the Fake Message robocalls. On May 23, 2024, the FCC issued a "Notice of Apparent Liability for Forfeiture" to Lingo Telecom that proposed a penalty of $2,000,000 for violations of 47 C.F.R. § 64.6301(a). Doc. no. 71-11, at 2. The next day, the FCC issued a "Notice of Apparent Liability for Forfeiture" to Kramer that proposed a $6,000,000 penalty "for perpetrating an illegal robocall campaign targeting potential New Hampshire voters two days before the state's 2024 Democratic Presidential Primary Election (Primary Election) in apparent violation of the Truth in Caller ID Act of 2009, which is codified at section 227(e) of the Communications Act of 1934, as amended (Communications Act), and [47 C.F.R.] § 64.1604 of our rules." Doc. no. 71-3, at 2. The FCC later entered a Consent Decree with Lingo Telecom that requires Lingo Telecom to pay a $1,000,000 civil penalty and "to implement a robust compliance plan." Doc. no. 91-1, at 2.

## STANDARD OF REVIEW

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" Starbucks Corp. v. McKinney, 144 S. Ct. 1570, 1576 (2024) (quoting Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7, 24 (2008)). The court will grant a motion for a preliminary injunction only if the moving parties "make a clear showing that '[they are] likely to succeed on

5

the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" Id. (quoting Winter, 555 U.S. at 20). Ordinarily, a likelihood of success on the merits and irreparable harm are the most important factors. District 4 Lodge of the Int'l Assoc. of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo, 40 F.4th 36, 39 (1st Cir. 2022).

In addition, a preliminary injunction must be sufficiently specific and detailed to be enforceable. Fed. R. Civ. P. 65(d); Axia NetMedia Corp v. Mass. Tech. Park Corp., 889 F.3d 1, 12-13 (1st Cir. 2018). "Although there is no bar against nationwide relief in federal district court or circuit court, such broad relief must be necessary to give prevailing parties the relief to which they are entitled." California v. Azar, 911 F.3d 558, 582 (9th Cir. 2018); see also Roe v. Dep't of Defense, 947 F.3d 207, 232 (4th Cir. 2020) (holding district courts have equitable power to issue nationwide injunctions "extending relief to those who are similarly situated to the litigants").

## DISCUSSION

Plaintiffs seek a nationwide preliminary injunction to enjoin the defendants from producing, generating, and distributing AI-generated robocalls impersonating any person without that person's consent or permission and from distributing mass communications in violation of federal or state law. Defendants Voice Broadcasting, Life Corporation, and Lingo Telecom all object to plaintiffs' motion. Defendants challenge plaintiffs' standing and their showing of the elements necessary for a preliminary injunction. Lingo Telecom also challenges the scope of the proposed preliminary injunction.

### I. Standing for Injunctive Relief

Defendants contend that plaintiffs lack standing to seek preliminary injunctive relief. In support, they note that the individual plaintiffs realized that the Fake Message robocalls were false

and voted in the Primary despite receiving the calls. For that reason, defendants contend that the individual plaintiffs suffered no harm. They also contend that the League suffered no harm because the organizations acted in response to the Fake Message robocalls based on their mission. Lingo Telecom also contends that plaintiffs have not shown that their proposed injunction would redress any alleged injury.

Under Article III of the United States Constitution, federal courts only have jurisdiction over "'Cases' and 'Controversies'— concrete disputes with consequences for the parties involved." Loper Bright Enters. v. Raimondo, 144 S. Ct. 2244, 2257 (2024). A case or controversy exists, for purposes of standing, when at least one plaintiff establishes that he, she, or it "has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" Murthy v. Missouri, 144 S. Ct. 1972, 1985–86 (2024) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). "[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024). "By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection." Id.

    A. <u>Individual Plaintiffs</u>

The individual plaintiffs assert, for purposes of the motion for a preliminary injunction, that the Fake Message robocalls injured them because "[t]he loss of a vote is an actual, imminent, and severe injury."[3] Doc. no. 83, at 8. They state that "[t]he manipulation and intimidation alleged

---

[3] Although the individual plaintiffs are three different people, they do not distinguish among themselves for purposes of showing standing.

due to the Defendants' own actions interfered with the exercise of people's right to vote in the New Hampshire Primary." Id. The individual plaintiffs further state that they "were harmed by receiving threatening, intimidating, and coercive robocalls – an injury plainly particular enough to confer standing." Id. at 9.

With respect to a likelihood of future injury to support injunctive relief, the individual plaintiffs argue that because defendants have produced, generated, and distributed robocalls in the past, they are likely to continue that activity in the future. They point to evidence that Kramer has worked with Life Corporation on robocalls since 2010 and that Lingo Telecom has not stopped illegal robocalls in the past, despite citations. The circumstances, however, have materially changed since defendants produced, generated, and distributed the Fake Message robocalls. The new circumstances undermine plaintiffs' reliance on past actions to show the likelihood that defendants will injure them in the future.

Kramer is under indictment in four counties in New Hampshire for the Fake Message robocalls. He is also the subject of an FCC "Notice of Apparent Liability for Forfeiture" with a civil penalty of $6,000,000. Life Corporation ended its relationship with Kramer, and plaintiffs provided no evidence that Life Corporation will again accept contract work from Kramer, particularly in light of his indictments and FCC liability. Lingo Telecom was the subject of an FCC "Notice of Apparent Liability for Forfeiture" with a civil penalty of $2,000,000 that was resolved through a consent decree that requires payment of $1,000,000 and requires Lingo Telecom to comply with laws relating to distributing robocalls. In addition, a primary election was held in New Hampshire on September 10, 2024, for state offices. Plaintiffs have not supplemented their motion with evidence that defendants produced, generated, or distributed false messaging through robocalls related to that election. The court is not aware of any such activity in the context of the

8

recent primary election. Given the current circumstances, plaintiffs have not shown a likelihood that the defendants will produce, generate, and distribute false information through robocalls in the future.

More importantly, the individual plaintiffs have not shown that they would be injured, even if defendants did produce, generate, and distribute false information through robocalls. The individual plaintiffs recognized that the Fake Message robocalls were false, and they voted despite receiving the calls. Plaintiffs have not shown that they would likely be injured by a false message from defendants in the future, given their demonstrated ability to discern the falsity of the previous message and the plaintiffs' awareness of the possibility of false messaging robocalls in the future.

Despite their concern about the right to vote, the individual plaintiffs have not established a likelihood that defendants will injure them in the future by interfering with their ability to vote. Therefore, the individual plaintiffs have not established standing to pursue injunctive relief in this case.

B.  League - Organizational Standing

"Like an individual, an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the [defendants'] conduct, . . . no matter how longstanding the interest and no matter how qualified the organization. . . .'" Alliance, 602 U.S. at 394 (quoting Valley Forge Christian College v. Am. United for Separation of Church & State, Inc., 454 U.S. 464, 486 (1982), and Sierra Club v. Morton, 405 U.S. 717, 739 (1972)). In addition, when the defendant has not caused a concrete injury, an organization cannot establish standing based on its reaction to the defendant's actions, that is, an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." Id. Further, a diversion of organizational resources does not confer

9

organizational standing. Id. Instead, the defendant's actions must have "directly affected and interfered with [the plaintiff's] core business activities." Id. at 395.

The League contends that defendants' Fake Message robocalls caused harm because the calls directly affected and interfered with the League's core business "to encourage informed and active participation in the government" and because the League "has been forced to divert human and other resources that would have gone into voter registration." Doc. no. 83, at 10. As to future injury, the League asserts that it "will be forced to continue these costly diversions to combat future illegal robocall campaigns." Id. Thus, the League asserts that it suffered and will continue to suffer harm because defendants caused and will continue to cause the League to divert resources to respond to false and misleading robocalls.

The Supreme Court, however, has held that harm arising from actions or costs incurred to oppose the defendants' actions does not support standing. Alliance, 602 U.S. at 394 (holding that medical associations did not have standing to challenge the Food and Drug Administration's approval of a drug, mifepristone, because their harm was "incurring costs to oppose FDA's actions"); see also Lawson v. Hargett, No. 24-cv-538, 2024 WL 3867526, at *17-*18 (M.D. Tenn. Aug. 19, 2024) (holding that the League of Women Voters of Tennessee lacked standing under Alliance to challenge Tennessee voting laws based on harm that the vagueness of the laws made it more difficult to advise members and the public "how to participate in the democratic process"); Citizens Project v. City of Colorado Springs, No. 22-cv-2365-SKC-MDB, 2024 WL 3345229, at *5-*6 (D. Colo. July 9, 2024) (holding that nonprofit advocacy organizations, including League of Women Voters of the Pikes Peak Region, lacked standing to challenge the timing of local elections, in part, because they were continuing to provide the same educational and outreach services rather than new services). In contrast, actions that directly affect and interfere with an

10

organization's core business and impair the organization's ability to provide its services, such as when the defendant disseminates material misinformation to the organization that results in the organization not being able to accurately advise its customers, is harm that supports standing. Alliance, 602 U.S. at 395 (discussing Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)); see also Get Loud Ark. v. Thurston, No. 24-cv-5121, 2024 WL 4142754, at *13 (W.D. Ark. Sept. 9, 2024) (holding that the "Wet Signature Rule" for voter registration injured the organization's ability to register voters, such as through online registration, which went beyond "indirect pocketbook harm"); League of Women Voters of Ohio v. LaRose, No. 23-cv-02414, --- F. Supp. 3d ---, 2024 WL 3495332, at *5 (N.D. Ohio July 22, 2024) (holding League had standing to challenge state law that prohibited assistance to disabled voters). Because the League failed to show that defendants' actions interfered with its core mission, it has not demonstrated that it suffered the type of injury necessary to confer standing. Further, for the reasons discussed above in the context of the individual plaintiffs, the League has not shown a likelihood that it will be harmed in the future because of defendants' actions.

Accordingly, the district judge should deny the motion for a preliminary injunction because plaintiffs all lack standing to seek prospective injunctive relief in this case. Even if standing could be established, however, plaintiffs have not shown that they will suffer irreparable harm in the absence of injunctive relief, and plaintiffs have not proposed a preliminary injunction that meets the requirements of Federal Rule of Civil Procedure 65. Therefore, the district judge should deny the motion on these bases as well.

## II. Irreparable Harm

The second requirement for a preliminary injunction is that plaintiffs will suffer irreparable harm in the absence of the proposed injunction. Starbucks, 144 S. Ct. at 1576. If plaintiffs "cannot

11

demonstrate irreparable harm, [the court] need not discuss the other factors." Together Employees v. Mass. Gen. Brigham Inc., 19 F.4th 1, 7 (1st Cir. 2021). When "[m]oney damages would adequately resolve all of the alleged harms," plaintiffs cannot show irreparable harm, even if plaintiffs did not allege and are not seeking money damages in the complaint. Id., at 9 & n.4.

Plaintiffs assert that "the Individual Plaintiffs have already been harmed by being subjected to Defendants' attempted threats, intimidation, and coercion." Doc. no. 71-1, at 29. In their reply, they state that the "irreparable harm threatened here is the fundamental right to vote." Doc. no. 83, at 22. Moreover, plaintiffs contend that the League will suffer irreparable harm "by being forced to divert resources away from its mission to defend against Defendants' false and malicious tactics." Doc. no. 71-1, at 30.

To the extent plaintiffs assert that defendants will cause them harm in the future in the absence of injunctive relief, which is questionable under the current circumstances, they have not shown that any such harm would constitute *irreparable* harm. The individual plaintiffs did not lose their fundamental right to vote and have not shown any likelihood that such a loss would happen in the future. They also have not shown that merely receiving the Fake Message robocalls otherwise harmed them. To the extent the League would be forced to divert resources or incur costs to counter the Fake Message robocalls, they have not shown those losses could not be compensated with money damages.[4] Further, as discussed above in the context of standing, they have not shown a likelihood that the defendants will cause them harm in the future due to changes in defendants' circumstances in the aftermath of the robocalls.

---

[4] If the League contends that its efforts to counter false messaging from defendants will harm others because the League will be unable to put the required resources into its voter education mission, that harm is to third parties, not the League.

Because plaintiffs have not demonstrated irreparable harm absent an injunction, the district judge should deny the motion for a preliminary injunction on that additional ground.

### III.     Scope of Proposed Injunctive Relief

Lingo Telecom contends that plaintiffs' proposed preliminary injunction cannot issue for the additional reasons that it is overbroad and vague. Every injunction must, among other things, "[s]tate its terms specifically" and "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B) & (C). The requirements that an injunction be specific and include reasonable detail were "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Schmidt v Lessard, 414 U.S. 473, 476 (1974). In the instant case, plaintiffs' proposed relief does not fall within these parameters.

Plaintiffs propose a preliminary injunction with the following terms:

1. Defendants are enjoined until further order of this Court from producing, generating, or distributing AI-generated robocalls impersonating any person, without that person's express, prior written consent.

2. Defendants are enjoined until further order of this Court from distributing spoofed telephone calls, text messages, or any other form of spoofed communication, without the express, prior written consent of the individual or entity upon whose half the communication is being sent.

3. Defendants are enjoined until further order of this Court from distributing telephone calls, text messages, or other mass communications that do not fully comply with all applicable state and federal laws or that are made for an unlawful purpose.

Doc. no. 71-31, at 1-2. The proposed injunction does not include definitions of the terms used, some of which appear to be unclear or ambiguous, such as "AI-generated," "spoofed," "applicable

state and federal laws," and "unlawful purpose." The lack of definitions renders the proposed injunction too vague to comply with Rule 65(d)(1).

In addition, paragraph 2 precludes distribution "without the express, prior written consent of the individual or entity upon whose half the communication is being sent." Even assuming "half" is a typographical error and means behalf, paragraph 2 does not explain who that person might be. It could be the person falsely portrayed in the communication, or it could be the person or entity who paid for the communication. Because the paragraph is not sufficiently specific or detailed, it does not meet the requirements of Rule 65(d)(1).

Paragraph 3 simply requires the defendants to obey the law, without specifying what law or what requirements are mandated. As such, paragraph 3 also does not meet the specificity and detail requirements of Rule 65(d)(1). Further, "obey the law" injunctions, even when the particular laws are specified, are problematic because of their broad scope. See, e.g., Brown v. Trs. of Boston Univ., 891 F.2d 337, 361 (1st Cir. 1989); S.E.C. v. McLellan, No. 16-cv-10874, --- F. Supp. 3d ---, 2024 WL 3030421, at *5 (D. Mass. June 17, 2024); see also Am. Society for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv., 60 F.4th 16, 22 (2d Cir. 2023); Prison Legal News v. Federal Bureau of Prisons, 944 F.3d 868, 883, n.22 (10th Cir. 2019); Walker v. City of Calhoun, Ga., 682 F. App'x 721, 724-25 (11th Cir. 2017); Perez v. Ohio Bell Tel. Co., 655 F. App'x 404, 410–11 (6th Cir. 2016). Plaintiffs do not list the laws they intend to have defendants obey, and as proposed, the injunction is not sufficiently specific to meet the requirements of Rule 65(d)(1).

### IV. Summary

Plaintiffs have not established standing to seek the prospective injunctive relief they seek, which precludes the proposed preliminary injunction. Additionally, plaintiffs have not established

that they would suffer future irreparable harm absent injunctive relief. Further, the plaintiffs' proposed preliminary injunction does not meet the specificity and detail requirements of Rule 65(d)(1).

## CONCLUSION

For the foregoing reasons, the district judge should deny plaintiffs' amended motion for a preliminary injunction. Doc. no. 71. Any objections to this Report and Recommendation must be filed within **fourteen days** of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Talesha L. Saint-Marc
United States Magistrate Judge

September 19, 2024

cc:   Counsel of record.