UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

LEAGUE OF WOMEN VOTERS OF
NEW HAMPSHIRE, ET AL.

    v.                                                                                                           Case No. 24-cv-73-SM-TSM

STEVE KRAMER, ET AL.

## REPORT AND RECOMMENDATION

    The claims in this case arose from fake robocalls sent to New Hampshire voters before the New Hampshire Primary in January 2024. Doc. No. 65. Plaintiffs, the League of Women Voters of New Hampshire, the League of Women Voters of the United States, and three New Hampshire voters brought claims under the Voting Rights Act, the Telephone Consumer Protection Act ("TCPA"), and New Hampshire Election Laws, NH RSA 664:14-a and 664:14-b, against Lingo Telecom, LLC, Life Corporation, Voice Broadcasting Corporation, and Steve Kramer, challenging their actions in generating and distributing the robocalls. Id. After settling their claims against the other three Defendants, Plaintiffs move for default judgment against Defendant Steve Kramer, seeking damages and an injunction. Doc. Nos. 123 & 125. For the reasons that follow, the district judge should grant the motion for default judgment in part by entering judgment in Plaintiffs' favor on all four counts in the amended complaint and awarding damages to the individual Plaintiffs, but the district judge should deny Plaintiffs' proposed permanent injunction and instead issue the injunction recommended in this report and recommendation.

## BACKGROUND

    Steve Kramer, a political consultant, used artificial intelligence to generate an automated telephone message that sounded like President Biden, and Kramer sent the fake robocall to New

Hampshire voters just two days before the New Hampshire Primary in January 2024. Doc. No. 116 at pgs. 9-10. The other Defendants provided the means for Kramer to distribute the fake robocall to New Hampshire voters. Id. at pgs. 7-8. The fake robocall delivered the following message, pretending to be President Biden's voice:

> This coming Tuesday is the New Hampshire Presidential Preference Primary. Republicans have been trying to push nonpartisan and Democratic voters to participate in their primary. What a bunch of malarkey. We know the value of voting Democratic when our votes count. It's important that you save your vote for the November election. We'll need your help in electing Democrats up and down the ticket. Voting this Tuesday only enables the Republicans in their quest to elect Donald Trump again. Your vote makes a difference in November, not this Tuesday.

Id. at pg. 10.

The three individual Plaintiffs in this case, James Fieseher, Nancy Marashio, and Patricia Gingrich, each received a fake robocall. Id. at pg. 5. Each of them realized that the call was not from President Biden, and each of them voted in the Primary. Id. at pg. 6. Nevertheless, "they were still the victims of an unlawful attempt to intimidate, threaten, or coerce them into not voting in the primary election." Id. at pg. 19.

A core function of the League of Women Voters of New Hampshire and of the United States (together referred to as the League) "is to combat voter suppression efforts and counsel citizens to register to vote, participate in elections, and engage with the civil process." Id. (internal quotation marks omitted). "[T]hat 'core function' of the League was adversely impacted when defendants attempted to suppress Democratic voter turnout by discouraging Democratic voters from casting a ballot in the [January] Primary." Id. "[T]he League entities diverted resources and incurred additional costs to counsel affected citizens that, contrary to the false information and implicit threats conveyed in the Deepfake Robocalls, voting in the [January] primary election

2

would not adversely affect their vote in November, nor would it undermine President Biden's ongoing re-election efforts." Id. at pg. 26.

The Federal Communications Commission ("FCC") investigated Kramer's activities and issued a Forfeiture Order, imposing a $6,000,000.00 penalty against him "for effectuating an illegal robocall campaign that targeted potential New Hampshire voters two days before the state's 2024 Democratic Presidential Primary Election (Primary Election) in violation of the Truth in Caller ID Act of 2009, which is codified at section 227(e) of the Communications Act of 1934, as amended(Communications Act), and section 64.1604 of our rules [47 U.S.C. § 227(e); 47 CFR § 64.1604]." In the Matter of Steve Kramer, 39 FCC Rcd. 11229.[1] The FCC concluded that Kramer knowingly caused transmission of inaccurate caller identification information, that he intended to defraud potential voters and to cause harm by depriving voters of their vote in the Primary, and that he caused nearly 10,000 illegal robocalls to be sent to New Hampshire voters. Id. at 11239-11242. The FCC also found that Kramer "acted without remorse, publicly claiming that his actions were justified to pursue his own agenda." Id. at 11244.

Plaintiffs brought claims against Kramer alleging that his actions intimidated, threatened, or coerced voters or attempted to do so in violation of § 11(b) of the Voting Rights Act of 1965 (Count One), that he disseminated unlawful artificial telephone calls in violation of § 227 of the TCPA (Count Two), that he delivered or caused to be delivered a prerecorded political message without required disclosure in violation of RSA 664:14-a (Count Three), and that he knowingly

---

[1] Plaintiffs cited the FCC's order as follows: *In re Steve Kramer,* 39 FCC Rcd. 11229, 11241 (EB 2024) with a link. Doc. No. 125 at pg. 4. The link provided, however, is to a different FCC order: In the Matter of Fed. State Joint Bd. on Universal Serv. Fed. State Joint Bd. on Jurisdictional Separations, 39 F.C.C. Rcd. 4533 (2024). The correct WestLaw citation is In the Matter of Steve Kramer, 2024 WL 4432157 (Sept. 30, 2024). To avoid confusion, the court cites to the FCC Forfeiture Order at 39 FCC Rcd. 11229. See https://www.govinfo.gov/content/pkg/GPO-FCC-Rcd-V39No12/pdf/GPO-FCC-Rcd-V39No12.pdf (last visited Oct. 2, 2025).

misrepresented the origin of a telephone call pertaining to a candidate in violation of RSA 664:14-b (Count IV).[2] Doc. No. 65. When Kramer failed to plead or appear in response to the amended complaint, Plaintiffs moved for entry of default. Doc. No. 90. Plaintiffs demonstrated service of the original complaint and the amended complaint, despite Kramer's apparent efforts to avoid service. Doc. No. 90 at pgs. 2-8. The court granted Plaintiffs' motion, End. Or. Aug. 29, 2024, and entered default, Doc. No. 92.[3]  Plaintiffs and Lingo Telecom, LLC entered a stipulation of dismissal of the claims against Lingo on March 26, 2025. Doc. No. 117.  Shortly thereafter, Plaintiffs and Defendants Life Corporation and Voice Broadcasting Corporation entered a consent judgment, Doc. No. 120, which the court approved, Doc. No. 121.  Plaintiffs now move for default judgment against Kramer.

The court held a hearing on September 9, 2025. Plaintiffs' counsel appeared and argued in favor of default judgment, including a permanent injunction. Kramer did not attend the hearing. The court directed Plaintiffs to file a revised proposed permanent injunction to address the

---

[2] Kramer was charged with crimes arising from his fake robocalls, and he was found not guilty. Doc. No. 123 at pg. 22, n.9. That result does not preclude Plaintiffs' civil claims under different statutes, requiring a lower burden of proof. See United States v. Frederickson, 988 F.3d 76, 84 (1st Cir. 2021) (citing United States v. Watts, 519 U.S. 148, 156 (1997)); Williams v. Brooks, 809 F.3d 936, 945 (7th Cir. 2016) ("Evidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident since it constitutes a negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt."). Preponderance of the evidence is the standard of proof for violation of § 11(b) of the Voting Rights Act, Fair Fight Inc. v. True the Vote, 710 F. Supp. 3d 1237, 1282 (N.D. Ga. 2024), for § 227(b) of the TPCA, Scoma Chiropractic, P.A. v. Nat'l Spine & Pain Ctrs., LLC, No. 2:20-CV-430-JLB-NPM, 2023 WL 5403440, at *1 (M.D. Fla. Aug. 22, 2023), appeal dismissed, No. 23-13087-F, 2023 WL 9067258 (11th Cir. Dec. 29, 2023); and for civil damages suits under New Hampshire law, State v. Charpentier, 126 N.H. 56, 61 (1985).

[3] Plaintiffs moved for default judgment (Doc. No. 98) against Kramer in September 2024.  At the time of their first motion for default judgment, Plaintiffs' claims against the other Defendants remained pending, and Defendants' motions to dismiss those claims were pending.  Doc. No. 116 at pgs. 1-2.  Given the procedural posture of the case, the court denied the motion.  See id. at pg. 5.

specificity requirements under Federal Rule of Civil Procedure 65(d), and other issues. Plaintiffs filed a supplemental memorandum in support of default judgment and a revised proposed permanent injunction. Doc. Nos. 125 & 125-1.

## LEGAL STANDARD

After the court enters default against a defendant, the court may enter default judgment only when the claim is for a sum certain. Fed. R. Civ. P. 55(a). In all other cases, the plaintiff must apply to the court for default judgment. See Fed. R. Civ. P. 55(b)(2). The party in default is deemed "to have conceded the truth of the factual allegations in the complaint." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002). Further, the party in default concedes "the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." Universitas Educ., LLC v. Granderson, 98 F.4th 357, 377 (1st Cir. 2024). Despite those concessions, the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002).

## DISCUSSION

Plaintiffs move for entry of judgment on each of their four claims against Kramer. Doc. No. 123. They seek an award of damages pursuant to 47 U.S.C. § 227(b)(3) of the TCPA, RSA 664:14-a, IV(b) and 664:14-b, II(B). They also seek a permanent injunction to bar Kramer from similar misconduct in the future.

### I. Jurisdiction

The court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Voting Rights Act and the TCPA and supplemental jurisdiction under

28 U.S.C. § 1367(a) over the claims under RSA 664:14-a and 664:14-b. Further, as the court previously determined, Plaintiffs have standing to bring their claims. Doc. No. 116 at pg. 27. Therefore, the district judge should conclude that Plaintiffs satisfied the jurisdictional requirements for a default judgment.

**II.    Liability**

Plaintiffs brought four claims against Kramer. See Doc. No. 65. They allege that Kramer violated § 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) (Count I), § 227 of the TCPA (47 U.S.C. § 227(b)(1)(B)) (Count II), RSA 664:14-a (Count III), and RSA 664:14-b (Count IV). Id. The court addresses each claim in turn.

A. The Voting Rights Act – Count I

In response to the organizational Defendants' motion to dismiss, the court previously held that "the Amended Complaint plausibly alleges that the Deepfake Robocall represents an attempt to intimidate or coerce the recipients into not voting in the primary election. If proved at trial, that would constitute a violation of the Voting Rights Act. See 52 U.S.C. § 10307(b) ('No person shall . . . attempt to intimidate, threaten or coerce any person for voting or attempting to vote.')." Doc. No. 116 at 28. Plaintiffs allege that Kramer acknowledges that he commissioned and distributed the fake robocalls in New Hampshire. Doc. No. 65 at ¶ 69. Therefore, the district judge should conclude that Kramer violated § 11(b) of the Voting Rights Act.[4]

---

[4] Courts have reached different conclusions as to whether § 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) provides a private cause of action. Compare Smith v. Montgomery Cnty., No. 24-cv-603, 2025 WL 1270085, at *3 (M.D. Ala. May 1, 2025) (concluding that no private cause of action exists), with Krabach v. King Cnty., No. 22-cv-1252, 2023 WL 7018461, at *3 (W.D. Wash. Oct. 25, 3023) (concluding that a private cause of action is implied); see also Arkansas United v. Thurston, 146 F.4th 673, 678 (8th Cir. 2025) (internal quotation marks omitted) (concluding that no private right of action exists for § 208 of the Voting Rights Act and stating "[i]f the text and structure of §§ 208, 11, and 12 show anything, it is that Congress intended to place enforcement in the hands of the Attorney General, rather than private parties"). While

6

B. <u>The TCPA – Count II</u>

"The Telephone Consumer Protection Act makes it unlawful 'to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless [a specified exemption applies].' 47 U.S.C. § 227(b)(1)(B) (emphasis supplied)." Doc. No. 116 at pgs. 29-30. A person initiates a telephone call when he "takes the steps necessary to physically place a telephone call," but a person may also be vicariously liable for violations by his agents. <u>Id.</u> at pgs. 31-32. For that reason, although Kramer did not actually dial the telephone numbers to make the fake robocalls, the district judge should conclude that he is liable for the actions of his agents and Co-Defendants, Voice Broadcasting and Life Corp, and their agents. <u>Id.</u> at pgs. 35 & 39.

C. <u>New Hampshire Election Laws – RSA 664:14-a and 664:14-b – Counts III & IV</u>

RSA 664:14-a and RSA 664:14-b restrict political messages. RSA 664:14-a requires prerecorded political messages to include identifying information about the candidate or organization sending the message and identification of who is paying for the message. RSA 664:14-b prohibits knowing misrepresentation of the origin of a telephone call that advocates for or against a party, person, or measure or contains information about a candidate or party. As Plaintiffs allege in the amended complaint, Kramer's fake robocall did not provide the information required under RSA 664:14-a and misrepresented the origin of the call, by impersonating President

---

Defendant Lingo Telecom and the amicus raised the issue in the motion to dismiss and amicus brief (Doc. No. 79-1 at pgs. 14-1 & Doc. No. 110 at pgs. 3-12), the claims against Lingo were dismissed by stipulation, so that motion to dismiss was terminated. Doc. No. 117. As a result, the court did not address the issue in the context of the other active Defendants' motion to dismiss (Doc. No. 76) and concluded there that Plaintiffs stated a viable claim under § 11(b) of the Voting Rights Act. Doc. No. 116 at pg. 29. For these reasons, the court will assume without deciding that § 11(b) of the Voting Rights Act may be enforced by private individuals and entities harmed by violation of the statute.

Biden, and by displaying a false caller identification. Doc. No. 65 at ¶¶ 122-32. Therefore, the district judge should conclude that Kramer is liable under RSA 664:14-a and 664:14-b.

### III. Damages

Plaintiffs seek an award of damages to each of the individual Plaintiffs under the TCPA and the New Hampshire Election Laws. In an action for a violation of the TCPA, a person is entitled to $500.00 in damages for each violation, and the court may double or treble that award if the defendant willfully or knowingly violated the TCPA. 47 U.S.C. § 227(b)(3). A plaintiff who is injured by a violation of the New Hampshire Election Laws is entitled to $1,000.00 in damages, which the court shall double or treble if the defendant's act or practice was a willful or knowing violation of the statute. RSA 664:14-a & 664:14-b.

In this case, the FCC determined that Kramer knowingly caused the fake robocalls to be transmitted with false caller identification information in order to mislead and to cause harm. FCC Order, 39 FCC Rcd. 11229, 11238-11242. The FCC noted, "Kramer himself acknowledged—without regret—that people may have felt 'disenfranchised' or that 'democracy has been disrupted' as a result of his calls." Id. at 11241. The FCC also noted that Kramer "acted without remorse, publicly claiming that his actions were justified to pursue his own agenda." Id. at 11244. Because Kramer's conduct was intentional, egregious, and harmful, the FCC imposed an upwardly adjusted penalty of $6,000,000.00. Id. at 11245. The FCC's investigatory findings and conclusions are persuasive evidence of Kramer's knowing and willful misconduct in generating and distributing the fake robocalls.

Under the statutory damages provisions, each individual Plaintiff is entitled to $2,500.00 in damages, which represents $500.00 for the TCPA violations and $2,000.00 for violation of RSA 664:14-a and 664:14-b, and the district judge should so find. In addition, the district judge should

conclude that Kramer acted willfully and knowingly in violating the TCPA and the New Hampshire Elections Laws and award treble damages to the individual Defendants, bringing the total amount to $7,500.00 for each individual Plaintiff.

### IV. Injunctive Relief

In addition to statutory damages, Plaintiffs seek a permanent injunction to prevent Kramer from engaging in the same illegal conduct in the future.[5] The TCPA and the New Hampshire Election Laws allow the court to impose injunctive relief. 52 U.S.C. § 10308(d), 47 U.S.C. § 227(b)(3), RSA 664:14-a, IV & RSA 664:14-b, II. "The standard for issuing a permanent injunction requires the district court to find that (1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction." Asociación de Educación Privada de P.R., Inc. v. García-Padilla, 490 F.3d 1, 8 (1st Cir. 2007); accord Dinner Table Action v. Schneider, No. 24-cv-00430, 2025 WL 1939946, at *4 (D. Me. July 15, 2025). The court concludes that Plaintiffs established the required bases for injunctive relief.

#### A. Elements for Injunctive Relief

As discussed above in the liability section, Plaintiffs' allegations establish that Kramer violated the Voting Rights Act, the TCPA, and the New Hampshire Election Laws, and his actions injured Plaintiffs. For that reason, the district judge should find that Plaintiffs succeeded on the merits of their claims. The individual Plaintiffs have demonstrated that they will suffer irreparable harm without an injunction against Kramer because he is likely, given his attitude, to continue his

---

[5] For the reasons expressed during the hearing and in Plaintiffs' supplemental memorandum (Doc. No. 125), the court is satisfied that injunctive relief is necessary, in addition to damages, to prevent Kramer from repeating the unlawful conduct that is challenged in this case.

9

unlawful conduct. Doc. No. 123 at pgs. 20-23. They also demonstrate that further interference with their voting rights, through Kramer's fake robocalls, is not compensable and is therefore irreparable harm. See, e.g., Walters v. Bos. City Council, 676 F. Supp. 3d 26, 47 (D. Mass. 2023) (quoting League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 247 (4th Cir. 2014)) (noting that "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury"). The League will suffer further irreparable harm if Kramer is not enjoined from his illegal activities because it likely will again have to divert resources and staff from its core functions to respond to more of Kramer's fake robocalls. Doc. No. 123 at pgs. 20-21. Based on Plaintiffs' allegations, taken as true, the district judge should find that Plaintiffs demonstrated success on the merits of their claims and also demonstrated the likelihood of irreparable harm absent an injunction against Kramer.

The injunction Plaintiffs seek would preclude Kramer from violating § 11(b) of the Voting Rights Act, § 227(b) of the TCPA, and New Hampshire Election Laws. As raised in this case, those statutes are aimed at preserving voting rights and preventing misuse of telephone services and systems for purposes of interfering with voting rights. Kramer has no apparent legitimate interest in continuing to generate and distribute misleading fake robocalls for the purpose of interfering in voting rights. The balance of the equities weighs in Plaintiffs' favor, and the public interest is served by protecting "the fundamental political right to vote." Obama for Am. v. Husted, 697 F.3d 423, 436–37 (6th Cir. 2012); Get Loud Arkansas v. Thurston, 748 F. Supp. 3d 630, 665 (W.D. Ark. 2024) ("[E]nsuring qualified voters exercise their right to vote is always in the public interest." (internal quotation marks omitted)). The district judge should conclude, therefore, that the balance of the equities and the public interest weigh in favor of an injunction to preclude Kramer from engaging in the unlawful activities that are addressed in this lawsuit.

B. <u>Proposed Injunction</u>

An injunction must "[s]tate its terms specifically" and "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B) & (C). Those requirements were "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." <u>Schmidt v Lessard</u>, 414 U.S. 473, 476 (1974). In this regard, an injunction that simply requires a party not to violate a statute, known as an "obey the law injunction," generally lacks the specificity and detail required under Rule 65. <u>See</u> <u>N.L.R.B. v. Express Pub. Co.</u>, 312 U.S. 426, 433 (1941); <u>United States v. Askins & Miller Orthopaedics, P.A.</u>, 924 F.3d 1348, 1362-63 (11th Cir. 2019) (citing cases); <u>Perez v. Ohio Bell Tel. Co.</u>, 655 F. App'x 404, 411 (6th Cir. 2016) (same); <u>E.E.O.C. v. AutoZone</u>, 707 F.3d 824, 841-42 (7th Cir. 2013) (also explaining when "obey the law" injunctions may be appropriate); <u>Belitskus v. Pizzingrilli</u>, 343 F.3d 632, 650 (3d Cir. 2003); <u>Walker v. N.Y. State Dept. of Health</u>, --- F. Supp. 3d. ---, 2025 WL 1786917, at *33 (E.D.N.Y. June 26, 2025).

Plaintiffs request a permanent injunction that first generally enjoins Kramer from violating § 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b); violating the TCPA, 47 U.S.C. § 227(b); and violating the New Hampshire Election Laws, RSA 664:14-a and 664:14-b. Doc. No. 125-1 ¶ 2(a). The proposed injunction would then also preclude Kramer from specific actions or conduct, as defined in the TCPA, pertaining to robocalls. Doc. No. 125-1 at ¶ 2(b) & (c). As such, the first section of the proposed injunction, ¶ 2(a), requests an "obey the law" injunction.

In the report and recommendation to deny Plaintiffs' motion for a preliminary injunction, the court stated that "'obey the law' injunctions, even when the particular laws are specified, are problematic because of their broad scope." Doc. No. 99 at pg. 14 (citing <u>Brown v. Trs. of Boston</u>

11

Univ., 891 F.2d 337, 361 (1st Cir. 1989); S.E.C. v. McLellan, 737 F. Supp. 3d 95 (D. Mass. 2024)). Plaintiffs acknowledge that limitation in a footnote in their motion for default judgment. Doc. No. 123 at pg. 24. There they cite their objection to the report and recommendation to show that "obey the law" injunctions are appropriate in some cases and contend that the requested injunction is appropriate here because "Kramer spearheaded a scheme to deliver thousands of unlawful robocalls to New Hampshire voters on the eve of an election."[6] Id.

Plaintiffs rely on S.E.C. v. McLellan, 737 F. Supp. 3d 95 (D. Mass. 2024), where the court entered a judgment including a permanent injunction based on the parties' settlement of the S.E.C.'s action against the defendant for securities fraud. Id. at 101-02. The court, however, expressed concerns about the breadth of the proposed permanent "obey the law" injunction. Id. at 103-06. Because of the parties' settlement and agreement, however, the court was persuaded to enter a permanent injunction that required compliance with certain securities laws but with the prohibited conduct specified as part of the injunction. Id. at 113-14.

In this case, Plaintiffs seek a default judgment, without the participation of the defaulted Defendant, Kramer. The concerns about "obey the law" injunctions raised by the court in McLellan are persuasive here, particularly in the context of a default judgment rather than a settlement

---

[6] In their objection to the report and recommendation, Plaintiffs argued that an "obey the law" injunction was appropriate as follows:

> Under the circumstances of this case, where Defendants each played a role in delivering thousands of unlawful robocalls to New Hampshire voters on the eve of an election, the proposed injunction against Defendants is justified. The injunctive demands are consistent with federal laws and regulations and do not create conflicting legal obligations, nor do they place an undue burden on Defendants. Moreover, the relief sought is necessary for achieving legal compliance and safeguarding the public's unwavering interest in protecting the right to vote.

Doc. No. 104 at pg. 21.

agreement. McLellan, 737 F. Supp. 3d at 103-06. Further, the TCPA authorizes a private right of action that allows a person or an entity to bring "an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation." 47 U.S.C. § 227(b)(3)(A) (emphasis added). In other words, § 227 does not appear to authorize an injunction to prohibit violation of the statute as a whole but instead authorizes an injunction to prohibit the particular violation that is the basis for the lawsuit. The New Hampshire Election Laws similarly authorize injunctive relief for a "person injured by another's violation" of those laws. RSA 664:14-a, IV(b); RSA 664:14-b, II(b).[7]

The district judge should conclude that the obey the law" injunction as proposed by Plaintiffs is not appropriate here. Instead, the prohibited conduct must be specifically articulated in the injunction.[8] Perhaps recognizing that their proposed injunction would not satisfy the requirements of Rule 65(d), Plaintiffs invited the court to narrow the scope of the proposed injunction as might be necessary. Doc. No. 123 at pg. 24, n.15.

C. Recommended Injunction

The district judge should order the following injunction:

**Mr. Kramer is permanently enjoined from engaging in the following conduct, anywhere within the United States:**

---

[7] As is noted above, § 11(b) of the Voting Rights Act does not explicitly authorize private actions injunctive relief. Nevertheless, to the extent such relief exists, the court assumes it would be within the bounds of the injunctive relief authorized under the TCPA.

[8] Although Kramer's unlawful conduct challenged in this case aimed at New Hampshire voters, to afford complete relief to Plaintiffs, and in particular to the League of Women Voters of the United States, the injunction necessarily must prohibit the specified unlawful conduct in all states. See Trump v. CASA, Inc., 606 U.S. 831, 852 & 861 (2025).

13

1. Orchestrating a deceptive and coercive robocall campaign or scheme that attempts to or does intimidate, threaten, or coerce lawfully registered voters to cause them to be fearful or reluctant to exercise their right to vote in any election in the United States;

2. Using or commissioning the use of an automated telephone dialing system, as defined in 47 U.S.C. § 227(a)(1), to make calls related to any local, state, or federal election or candidate for election that carry a recording that has been convincingly altered or manipulated to misrepresent someone as saying something that was not actually said, without that person's prior express consent; and

3. Causing any caller identification service, as defined in 47 U.S.C. § 227(e)(8)(B), to knowingly transmit misleading or inaccurate caller identification information, as defined in 47 U.S.C. § 227(e)(8)(A), in connection with any voice service, as defined in 47 U.S.C. § 227(e)(8)(E), in connection with calls related to any local, state, or federal election or candidate for election.

4. Delivering or knowingly causing to be delivered a prerecorded political message unless the message contains, or a live operator provides, within the first 30 seconds of the message, the following information:

   (a) The name of the candidate, the measure, or any organization or organizations the person is calling on behalf of, and

   (b) The name of the person or organization paying for the delivery of the message and the name of the treasurer, if applicable; and

5. Knowingly misrepresenting, as described in RSA 664:14-b, the origin of a telephone call which expressly or implicitly advocates the success or defeat of any party, measure, or person at any election, or contains any information about any candidate or party.

## CONCLUSION

For the foregoing reasons, the district judge should grant Plaintiffs motion for a default judgment (Doc. No. 123) as recommended in this order. The district judge should grant judgment in favor of Plaintiffs and against Kramer on all counts in the complaint. Damages should be awarded as follows: Kramer shall pay James Fieseher a total of $7,500.00 in damages with post judgment interest; Kramer shall pay Nancy Marashio 7,500.00 in damages with post judgment interest; and Kramer shall pay Patricia Gingrich $7,500.00 with post judgment interest. The district judge should issue the permanent injunction as recommended in this report and recommendation, but not issue the permanent injunction proposed by Plaintiffs. The district judge should retain jurisdiction in the case for purposes of enforcing the judgment.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. The objection period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Id. (citations omitted).

_____
Talesha L. Saint-Marc
United States Magistrate Judge

October 17, 2025

cc:    Counsel of Record
       Steve Kramer, pro se